```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

          - v. -                   :        S1 11 Cr. 548 (GBD)

WILLARD LANHAM,                    :
     a/k/a "Ross Lanham,"
                                   :

               Defendant.          :
- - - - - - - - - - - - - - - x
```

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AND, IN THE ALTERNATIVE, A NEW TRIAL**

PREET BHARARA
United States Attorney
for the Southern District of
New York for the United States
of America

Brian A. Jacobs
Alvin Bragg
Assistant United States Attorneys
     – Of Counsel –

**PRELIMINARY STATEMENT**

On March 5, 2012, following a trial that began on February 27, 2012, a jury sitting in the Southern District of New York returned a verdict of guilty against Willard Lanham, a/k/a "Ross Lanham," convicting him of one count of unlawfully converting to his own use funds belonging to the New York City Department of Education ("DOE"), in violation of Title 18, United States Code, Section 666(a)(1)(A), and three counts of mail fraud, in violation of Title 18, United States Code, Section 1341.

On February 29, 2012, at the close of the Government's case, Lanham moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29"), which the Court denied.  (Trial Transcript ("Tr.") 459).  On March 2, 2012, following the close of all evidence, Lanham renewed his Rule 29 motion, which the Court again denied.  (Tr. 753).  On April 19, 2012, Lanham again renewed his Rule 29 motion and, in the alternative, moved for a new trial pursuant to Rule 33.  In support of his renewed motion, Lanham filed a Memorandum of Law ("Def. Mem.") and an Affirmation of Stephen N. Preziosi ("Preziosi Aff."), making the following two arguments:

First, Lanham now argues that the evidence was insufficient to support his conviction on Count One because the evidence did not sufficiently demonstrate that Lanham intended to deprive the DOE of the value of money the DOE paid for the services of certain consultants, where those consultants were allegedly

performing legitimate work for the DOE.  Second, Lanham claims
that his convictions on all counts should be vacated because he
was denied effective assistance of counsel where defense counsel
at trial did not object to what Lanham now claims was
(1) inadmissible hearsay, (2) inadmissible evidence of other bad
acts, and (3) inadmissible references to privileged material, and
where defense counsel did not introduce two particular documents
into evidence.

As set forth in more detail below, Lanham's arguments have
no merit.  The evidence amply supported Lanham's conviction on
Count One (the only Count for which Lanham challenges the
sufficiency of the evidence), and Lanham received effective
assistance of counsel.

Accordingly, Lanham's motions should be denied.

**STATEMENT OF FACTS**

**A.**   **The Government's Case**

The evidence at trial proved conclusively that Lanham
engaged in a scheme to steal money from the DOE by making
misrepresentations regarding the services of three consultants,
as he secretly funneled the DOE's payments for the consultants
into his own company, Lanham Enterprises, Inc. ("Lanham
Enterprises").  The Government's proof consisted primarily of
(1) the testimony of multiple individuals who worked for the DOE
to whom Lanham made misrepresentations regarding who was paying

2

for and profiting from the services of the consultants, (2) the testimony of two individuals who worked for Verizon, a DOE contractor, to whom Lanham had made misrepresentations regarding the DOE's approval of payments for the consultants, (3) the testimony of the three consultants themselves -- Tamika Stevenson, Karen Tempio, and Robert Lanham -- who confirmed that they were not actually working on the project described in the bills Verizon submitted to the DOE for their work at Lanham's direction, (4) the fraudulent bills that Verizon submitted to the DOE for consultants' work, as well as the underlying bills (and supporting documentation) to Verizon from DOE subcontractors, including Lanham Enterprises, and (5) a stipulation, a summary chart, and bank records reflecting Lanham's profits of approximately $1.7 million from the consultants' work.

### 1.   Lanham's Role at the DOE

Between 2000 and 2008, Lanham worked as a consultant at the DOE in the DOE's information technology division, "DIIT". (Tr. 276-77, 366; GX 2002). The DOE paid approximately $200,000 per year for Lanham's services. (GX 2002). During this time, Lanham had two primary responsibilities. First, Lanham managed network infrastructure deployment for public schools in the City of New York. (Tr. 276, 366; GX 608). That role entailed coordinating, among other things, the installation of internet cable at the schools by Verizon. (Tr. 368; GX 608). Second, Lanham managed a

project that involved reviewing all of the DOE's telephone bills for accuracy.  (Tr. 370; GX 608).

In connection with the second project, the telephone bill review, Lanham was assisted at various times between 2004 and 2008 by three consultants: Tamika Stevenson, Karen Tempio, and Robert Lanham.

a.   Tamika Stevenson.  Stevenson initially worked for the DOE in another capacity, but got laid off in around 2004. (Tr. 210).  Lanham then asked Stevenson to come work for him. (Tr. 211; GX 2002).  From 2004 until October 2008, Stevenson worked for Lanham at the DOE's office in Brooklyn and was responsible for reviewing for accuracy telephone bills submitted to the DOE by Verizon, Sprint, and AT&T.  (Tr. 213).

b.   Karen Tempio.  Lanham also recruited Karen Tempio, his personal assistant at his Long Island home, to help with the phone bill review project.  (Tr. 254).  Tempio worked for Lanham between 2007 and 2008 (GX 2002) at the DOE's office in Brooklyn, where she assisted Stevenson in reviewing telephone bills from Verizon, Sprint, and AT&T.  (Tr. 257).

c.   Robert Lanham.  In addition to Stevenson and Tempio, Lanham asked his brother, Robert Lanham, to assist on the telephone bill review project.  (Tr. 352).  Between 2005 and 2007 (GX 2002), Robert Lanham worked on the project out of his basement in Long Island (Tr. 352) and reviewed Verizon and AT&T

4

telephone bills that Stevenson sent to him (Tr. 354).

### 2.   Lanham's Lies to the DOE

Between 2004 and 2008, Lanham repeatedly told various individuals at the DOE different lies about how Stevenson and Tempio were being paid in order to prevent the DOE from discovering that not only was the DOE paying hundreds of thousands of dollars for their services, but also that much of that money was in fact going into Lanham's own pockets.

For example, Lanham lied and told Tom Kambouras, a supervisor at DIIT, that Stevenson and Tempio were provided to the DOE "by Verizon at no charge." (Tr. 42). Lanham similarly lied and told Joseph Iacoviello, another DOE supervisor, that Verizon was paying for Stevenson and Tempio, and that this arrangement had, in fact, been recommended to the DOE by an outside assessment done regarding telecommunication billing. (Tr. 73; GX 609). Meanwhile, Lanham lied and told his immediate supervisor during most of the relevant time period, Joseph Eaione, that Stevenson was being paid by another division of the DOE, not by DIIT. (Tr. 370). Lanham also lied and told Eaione that Tempio was working at no cost to the DOE. (Tr. 371-72).

Lanham's lies to individuals at the DOE were not limited to lies about how Stevenson and Tempio were being paid. Rather, Lanham also lied to conceal the fact that he was profiting off of their work as well as the work of Robert Lanham, who nobody at

5

the DOE, including Lanham's supervisors, had ever heard of during the relevant time period (see, e.g., Tr. 293, 372-73).

Specifically, in around April 2008, Lanham signed a certification stating that his company, Lanham Enterprises, was "not in the business of placing consultants but ha[d] provided consultants from time to time based upon a client[']s request, needs or project demands." (GX 606). That certification, which Lanham signed at the request of DOE supervisor Sheila Raskob, was at best only half-truthful, because between at least 2004 and 2008, there was no time at which Lanham Enterprises was not making money from the DOE off of one consultant or another, including Stevenson, Tempio, and Robert Lanham. (Tr. 689; GX 2002).

### 3.   **Lanham's Lies to Verizon**

In order to get away with his scheme, Lanham not only told lies to individuals at the DOE, but also told lies to individuals at Verizon. Specifically, Lanham told a manager at Verizon, Chris Louridas, that Verizon should include the charges for Stevenson, Tempio, and Robert Lanham on the bills relating to the cable installation project that Lanham was overseeing, and in fact should describe the charges as relating to that project. (Tr. 139). On the bills that Verizon ultimately submitted to the DOE for these consultants' work, nothing about the descriptions of the work indicated that the charges were for consultants, and

in fact the charges were described as relating to cable installation, not telephone bill review.  (<u>See</u>, <u>e.g.</u>, GX 103A, 128A, 120B).  Indeed, Lanham was the "Single Point of Contact" for Verizon on the cable project (GX 702), so the bills in connection with that project were all sent to Lanham himself for review.  (<u>See</u>, <u>e.g.</u>, GX 103A, 128A, 120B).

### 4.   <u>Lanham's Lies Helped Him Steal the DOE's Money</u>

Lanham's lies helped him steal approximately $1.7 million from the DOE.  To accomplish this, Lanham caused the money that the DOE unwittingly paid for Stevenson, Tempio, and Robert Lanham, to be funneled through a chain of companies and ultimately to Lanham's own company, Lanham Enterprises.  (<u>See generally</u> GX 101-136; Tr. 423-54).

Specifically, Lanham first had Stevenson, Tempio, and Robert Lanham, bill his own company, Lanham Enterprises, either directly or through a subcontractor, for the hours they worked each week for the DOE.  The amount varied, but Lanham Enterprises paid out between about $35 and $70 an hour for their work.  (<u>See</u>, <u>e.g.</u>, GX 103E, 128G, 128F, 120J).  Lanham Enterprises then billed a subcontractor for these consultants' work, and marked up the bills to between $175 and $225 dollars an hour, so that Lanham could pocket the difference.  (<u>See</u>, <u>e.g.</u>, GX 103D, 128C, 120I).  Along with the bills, Lanham sent the subcontractor time sheets for the three consultants that he himself signed on behalf of the

7

DOE, even the DOE had instructed him that he was not allowed to sign consultants' time sheets.  (See, e.g., GX 103G, 128G, 120J, 603; Tr. 684-85).  The subcontractor paid Lanham Enterprises and then typically billed another subcontractor, which billed Verizon for the work.  (See, e.g., GX 103C, 103B, 128C, 128B, 120I, 120H).  Verizon, in turn, billed the DOE.  (See, e.g., GX 103A, 128A, 120B).

Lanham stipulated that he had made approximately $1.7 million in this manner off of the work that Stevenson, Tempio, and Robert Lanham had done for the DOE.  (GX 2002; see generally GX 101-136; Tr. 423-54).

**B.**   **The Defense Case and Lanham's Motion for a Judgment of Acquittal**

In his defense, Lanham called two witnesses who testified about Lanham's work with another DOE contractor, IBM, during the years of 2002 and 2003, as well as a summary witness regarding the amounts IBM's consultants made at the DOE.  Lanham also testified himself.  In his testimony, Lanham admitted that his statement to Eaione that Stevenson was being paid by another division of the DOE rather than by DIIT was not accurate (Tr. 652), and admitted telling Louridas at Verizon that Stevenson, Tempio, and Robert Lanham were working on the cable-installation project (Tr. 707), even though the telephone bill review project the consultants were responsible for had nothing to do with installing internet cable (Tr. 709).  Lanham claimed, however,

8

contrary to the testimony of other witnesses, that he never told Eaione that Tempio was working for free, and that he never told Kambouras or Iacoviello that Stevenson and Tempio were provided at no charge.  (See, e.g., Tr. 654, 713).

At the close of the Government's case, Lanham moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure.  (Tr. 459).  Lanham argued that the evidence failed to establish that fraud was committed.  (Tr. 459).  The Court denied the motion, finding that if the jury "were to credit the witnesses," the jury "could conclude that the offenses were committed by the defendant."  (Tr. 459).

At the close of all evidence, Lanham renewed his motion for a judgment of acquittal, but made no further argument.  (Tr. 753).  The Court again denied the motion, finding that a reasonable jury could make "factual determinations of credibility" and could "conclude that the defendant was guilty as charged."  (Tr. 753).

**C.**  **The Verdict**

On March 5, 2012, the jury found Lanham guilty of all charges.  (Tr. 887).

**ARGUMENT**

**A.**  **The Jury's Conviction of Lanham On Count One Was Supported by Abundant Evidence and Should Not Be Undone**

Lanham challenges the sufficiency of the evidence supporting the jury's guilty verdict on Count One.  He contends that the

trial evidence was insufficient to prove that Lanham intended to
deprive the DOE of the value of money paid for Stevenson, Tempio,
and Robert Lanham, where Lanham's intent "was never to deprive
the DOE of the value of the money that was paid," but was instead
"to provide the services of three consultants who did provide
services to the DOE."  (Def. Mem. at 2-3).  In making this
argument, Lanham ignores the evidence of Lanham's lies altogether
and construes the evidence of Lanham's intent in the light most
favorable to himself.  Considering the evidence in its totality
and in the light most favorable to the Government, Lanham's
sufficiency claim should be swiftly rejected.

   **1.   Applicable Law**

      The governing legal standards for assessing the sufficiency
of evidence adduced at trial are well-established.  A defendant
pressing a post-trial insufficiency of the evidence claim "bears
a very heavy burden," United States v. Desena, 287 F.3d 170, 177
(2d Cir. 2002), and faces "an uphill battle."  United States v.
Jones, 30 F.3d 276, 281 (2d Cir. 1994); see also, e.g., United
States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000).  In
evaluating a Rule 29(c) insufficiency claim, the trial evidence
must be viewed in the light most favorable to the prosecution,
United States v. Gonzalez, 110 F.3d 936, 940 (2d Cir. 1997), and
the Court must credit every inference that the jury might have
drawn in favor of the Government.  See Jackson v. Virginia, 443

10

U.S. 307, 319 (1979); United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).  Indeed, the Court must "resolve all issues of credibility in favor of the jury's verdict," Desena, 287 F.3d at 177 (internal quotations omitted), United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998), and in a close case, where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter."  Autuori, 212 F.3d at 114 (internal quotation marks and brackets omitted).

Accordingly, in assessing the evidence, the Court ultimately asks whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Autuori, 212 F.3d at 114 (quoting Jackson, 443 U.S. at 319) (emphasis in original); accord Desena, 287 F.3d at 176; United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999); United States v. Amato, 15 F.3d 230, 235 (2d Cir. 1994).  Under this standard, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."  United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (internal quotation marks omitted).

### 2.  **Discussion**

Viewed in its totality and in the light most favorable to the Government, the evidence at trial supported the jury's

verdict on Count One that Lanham knowingly converted to his own use funds belonging to the DOE.  In contending otherwise, Lanham fails to present the evidence in the light most favorable to the Government.  When properly considered, the evidence was more than sufficient to support the jury's verdict.

Lanham's argument in support of his sufficiency challenge appears to be that because Stevenson, Tempio, and Robert Lanham performed a legitimate service for the DOE -- the review of telephone bills -- Lanham's intent could not have been to deprive the DOE of the value of the money paid for those services.  (Def. Mem. at 2-3).  But the fact that the consultants may have performed some legitimate work for the DOE does not mean that Lanham necessarily lacked fraudulent intent.

To the contrary, Lanham's intent was readily established by the extensive evidence that Lanham lied to multiple individuals at the DOE and said that the services of the consultants were being provided for free.  (Tr. 42, 73, 370-72; GX 609).  Lanham's intent was further established by the evidence of how Lanham arranged for the charges for the three consultants to be hidden in Verizon's bills to the DOE (which Lanham himself was responsible for reviewing), which described the charges as relating to a project installing internet cable that the consultants did not actually work on.  (Tr. 139).

The evidence not only established that Lanham intended to

12

deprive the DOE of money, but also established that he did, in fact, deprive the DOE of money.  The evidence demonstrated that Lanham's lies tricked the DOE into paying millions of dollars for the services of Stevenson, Tempio, and Robert Lanham, $1.7 million of which went into Lanham's own pockets.  (See, e.g., GX 2002).  The fact that Stevenson, Tempio, and Robert Lanham may have provided a legitimate service to the DOE in connection with a different project than was reflected on the Verizon bills -- a telephone bill review service that Lanham repeatedly said was free -- does not provide a basis for questioning the jury's conclusion that Lanham intended to deprive the DOE of the value of the money that Lanham secretly funneled to himself based on these consultants' work.

Viewed in its totality, the evidence easily established that Lanham intended to steal DOE funds to which he was not entitled. Accordingly, Lanham's sufficiency claim should be rejected.

**B.    Lanham Was Not Denied Effective Assistance of Counsel**

Lanham contends that he was denied effective assistance of counsel because defense counsel failed to object to the admission of the evidence that Lanham now claims was improperly admitted. Lanham also claims defense counsel should have introduced two particular documents into evidence.  Lanham's contentions should be rejected because contrary to Lanham's assertions, defense counsel made appropriate objections, did not object where an

13

objection would have been frivolous, and introduced exhibits for which there was an appropriate basis for admission.  Lanham cannot come close to making the necessary showings that defense counsel's conduct fell below an objective standard of reasonableness, or that Lanham suffered any prejudice as a result of counsel's alleged ineffectiveness.

### 1.   Applicable Law

To succeed on a claim of ineffective assistance of counsel, a defendant must: (1) overcome a "strong presumption" that his counsel's conduct was reasonable and show that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 693-94 (1984); accord United States v. De La Pava, 268 F.3d 157, 163 (2d Cir. 2001); United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000). The burden is on the defendant to establish both elements. Strickland v. Washington, 466 U.S. at 687.

### 2.   Discussion

In this case, Lanham's ineffective assistance claim can be quickly rejected, without any further development of the factual record.  Lanham makes a blanket assertion that defense counsel's failure to object to the alleged evidentiary errors raised in his

motion, and failure to introduce two documents as exhibits, constituted ineffective assistance of counsel. Lanham is wrong on the facts and the law.

First, Lanham claims that he was deprived of effective assistance of counsel because defense counsel did not object to certain hearsay evidence. (Def. Mem. at 4). Specifically, Lanham argues that the testimony of Government witnesses regarding Lanham's own statements to the witnesses "that the consultants were not being paid for by DOE or were 'free' were inadmissible hearsay statements and Mr. Lanham's attorneys failed to make any objection to this." (Preziosi Aff. ¶¶ 42-43). But it is well established under federal law that a "party's own statement," when "offered against an opposing party" is "not hearsay." Fed. R. Evid. 801(d)(2)(A). Thus, Lanham's own statements, which the Government offered against him, do not qualify as hearsay in the first place. Lanham's claim that defense counsel should have objected to the admission of these statements as hearsay is frivolous.

Second, Lanham claims that defense counsel provided ineffective assistance by failing to argue for exclusion of the "other act" evidence that was the subject of questions put to Lanham by the Government during cross-examination. Specifically, Lanham argues that he was "cross-examined about various tax liens, money he owed to creditors, money that he gave his son and

various assets that he owned and transferred that had no
relevance to this case." (Def. Mem. at 5). Lanham contends that
this evidence was inadmissible pursuant to Rule 404(b) of the
Federal Rules of Evidence and that defense counsel should have
objected during cross examination. (Def. Mem. at 5). Contrary
to Lanham's claim, under Rule 608(b) of the Federal Rules of
Evidence, district courts have discretion to permit cross-
examination concerning specific instances of a witness's conduct
if the conduct is probative of truthfulness or untruthfulness.
Lanham's actions in hiding money from the Government -- the
subject of the challenged testimony -- are clearly probative of
his truthfulness or untruthfulness, and thus are plainly
appropriate areas for cross examination. Lanham's claim that
defense counsel should have objected to these entirely
appropriate lines of cross-examination thus has no merit.

    Third, Lanham claims that defense counsel provided
ineffective assistance by failing to object when the Government
cross-examined Lanham regarding the contents of a letter to
Lanham -- from several years before Lanham was criminally
charged, while the fraudulent scheme was ongoing -- containing
legal advice regarding consultant billing from Lanham's prior
attorneys, which was marked as Government Exhibit 903. (Def. Mem.
at 5; GX 903). But as defense counsel acknowledged at trial,
Lanham had on a prior occasion disclosed Government Exhibit 903

16

to a company with which Lanham did business, and this effectively "broke the confidentiality." (Preziosi Aff. ¶ 81; Tr. 694). Because the letter had previously been disclosed to a third party, the letter was not privileged. See, e.g., United States v. Ackert, 169 F.3d 136, 139-40 (2d Cir. 1999) (client's voluntary disclosure of an otherwise privileged communication to a third party generally voids or waives the protections of the privilege); In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) (disclosure "eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege"). Accordingly, Lanham's claim that defense counsel was ineffective for failing to object to this line of cross-examination has no merit where, as counsel acknowledged at trial, the privilege as to the relevant communications had been waived.

Lanham also claims that defense counsel provided ineffective assistance by failing to put two particular documents into evidence. Lanham attaches the two documents to his motion papers: they are an email dated February 5, 2003, from Sheila Raskob to others (Preziosi Aff. Ex. B), and Lanham's own handwritten notes principally from early 2003 (Preziosi Aff. Ex. C). (Lanham's Memorandum of Law in support of his motion makes no argument about these documents, and the argument is presented

17

solely in Lanham's new counsel's affirmation.  (Preziosi Aff. ¶¶ 60-66)).  Lanham now argues that these documents would have demonstrated to the jury that "it was the understanding of DOE personnel that Ms. Stevenson would be paid for by the DOE and billed through Verizon."  (Preziosi Aff. ¶ 65).

Contrary to Lanham's claim, defense counsel's decision not to introduce these documents into evidence does not remotely show defense counsel to have been ineffective.  Even if there were an appropriate basis (such as a non-hearsay purpose) for admitting these documents into evidence at trial -- which is not readily apparent, and which Lanham fails to identify in his motion papers -- Lanham cannot plausibly claim to have been prejudiced by the fact that these documents were not in evidence.  Exhibit B at most suggests that Sheila Raskob at the DOE was aware, in February 2003, that Stevenson would be working around that time for the DOE on behalf of a vendor called "DynTek."  But Lanham's conviction relates to a different time period, from between 2004 and 2008, when Stevenson was being paid not by DynTek, but through Lanham Enterprises.  (GX 2002; Superseding Indictment S1 11 Cr. 548 (GBD) (Counts One and Two)).  In fact, Stevenson herself acknowledged in her testimony that she worked for the DOE prior to 2004 in another capacity, and was paid at some point through DynTek, but was laid off.  (Tr. 210, 214).  Thus, there was no dispute at trial that Stevenson had worked for the DOE,

18

and gotten paid through DynTek, in the time before Lanham began secretly billing the DOE through Verizon for Stevenson's services using his own company.  Lanham accordingly suffered no prejudice whatsoever from the fact that Exhibit B was not admitted into evidence.

Nor was Lanham prejudiced by the fact that his attorney did not put Exhibit C into evidence.  As with Exhibit B, Exhibit C contains what purport to be Lanham's handwritten notes reflecting that in February 2003, Stevenson was a subcontractor of DynTek. Even if these notes were somehow admissible evidence, Lanham does not articulate any way in which they would have helped his case, or in which their absence prejudiced him.  In fact, the notes appear, if anything, to support the Government's case.  The final lines of the exhibit reflect notes from May 24, 2004, stating that Stevenson's "last day w/DynTek" would be her "1st day with Custom/Verizon."  As the evidence at trial demonstrated, it was after Stevenson stopped being paid through Dyntek that Lanham inserted his company, Lanham Enterprises, into the billing chain for her services.  (GX 2002).  Indeed, it was at that point, as he began making hundreds of thousands of dollars off of Stevenson's bills, that Lanham began telling lies to the DOE about who was paying for Stevenson's work.  It was at that point -- identified by Lanham's own notes reflected in Exhibit C -- that his fraud scheme began.  Accordingly, Lanham was not

19

prejudiced by the fact that these notes were not in evidence.

More broadly, even if Lanham would have been able to make favorable arguments based on Exhibits B and C at trial, there is no plausible possibility that these documents would not have led the jury to reach a different result.  Nothing about these documents comes close to rebutting the testimony of numerous Government witnesses -- whose testimony the jury credited -- regarding the many lies Lanham told to help his scheme succeed.

In short, it cannot be said that defense counsel's conduct with regard to any of the issues Lanham has raised fell below any objective standard.  Defense counsel objected to admission of evidence where appropriate, and to the extent defense counsel did not object, this failure was immaterial.  Defense counsel also introduced numerous exhibits where appropriate, and to the extent defense counsel did not introduce certain exhibits, there was no basis or reason for their admission.  Further, none of the conduct Lanham points to could be said to have caused him prejudice.

Accordingly, Lanham's ineffective assistance claim can and should be rejected.

## C.   Lanham Is Not Entitled to a New Trial

Finally, and in the alternative to his Rule 29 motion, Lanham moves for a new trial under Rule 33.  (Def. Mem. 1, 6). The defendant cites Rule 33 to request this alternative relief,

but he does not offer the applicable legal standards or any additional arguments.

Rule 33 "motions for a new trial are disfavored in the Second Circuit," <u>United States</u> v. <u>Gambino</u>, 59 F.3d 353, 364 (2d Cir. 1995), and such motions should generally be granted only if the Court finds "a real concern that an innocent person may have been convicted." <u>United States</u> v. <u>Sanchez</u>, 969 F.2d 1409, 1414 (2d Cir. 1992).  That is emphatically not the case here.  The evidence set out above is powerful proof that the defendant is, as the jury found, guilty.

**<u>CONCLUSION</u>**

For the reasons set forth above, the Lanham's motions pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure should be denied.

Dated:     New York, New York
           May 21, 2012

                         Respectfully submitted,

                         PREET BHARARA
                         United States Attorney


                 By: _____/s_____
                         Brian A. Jacobs
                         Alvin Bragg
                         Assistant United States Attorneys
                         (212) 637-2512/1085